UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PAMELA MARCOTTE,                                           DECISION AND ORDER

                                        Plaintiff,          12-CV-6416 CJS (MWP)

            -v-

CITY OF ROCHESTER, SUPERVISOR
JAMES MCINTOSH, COMMISSIONER
PAUL HOLAHAN,
                                        Defendants.

---

APPEARANCES

For Plaintiff:          Christina A. Agola, Esq.
                        Ryan C. Woodworth, Esq.
                        Christina Agola PLLC
                        1415 Monroe Avenue
                        Brighton, New York 14618

For Defendants:         Adam M. Clark, Esq.
                        City of Rochester Law Department
                        City Hall, Room 400-A
                        30 Church Street
                        Rochester, New York 14614-1295

INTRODUCTION

This is an action for employment discrimination brought pursuant to 42 U.S.C. § 1983 ("Section 1983").  Now before the Court are Defendants' motion to dismiss the complaint for failure to state a claim (Docket No. [#6]), and Plaintiff's cross-motion [#11] to amend the complaint.  Plaintiff's cross-motion to amend is granted, and Defendants' motion to dismiss is granted as to the Amended Complaint.

BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and Amended Complaint, and two disciplinary complaints that were filed against Plaintiff, which are incorporated by reference.[1]  *See*, Clark Decl. [#6-1], Exhibits B & C.  During the relevant time, between 2009 and 2012, Plaintiff was employed by the City of Rochester, New York, in the Department of Environmental Services ("DES").  Plaintiff's immediate supervisor was defendant City Engineer James McIntosh ("McIntosh"), who in turn reported to the Commissioner of DES, defendant Paul Holahan ("Holahan").  Tassie Demps ("Demps") was the City's Director of Human Resources.  Plaintiff's title was "Managing Architect," and as such, she was the "head" of the DES's Architectural  Division, and the only female division head.  There were several other divisions within DES, such as the Street Design Division, that were headed by males.

In connection with her work, Plaintiff was required to meet periodically with McIntosh, though the frequency of those meetings is not specified in this action.  Beginning in 2009, Plaintiff began to feel that McIntosh was discriminating against her by being "unresponsive" during their meetings, by "staring" at her in a "hostile" way, and by staring at the floor in an "intimidating" manner when Plaintiff talked.   Plaintiff also felt that McIntosh was "marginalizing" her and ignoring her emails to him.  Plaintiff believes that McIntosh did not behave in that manner toward male division heads.  Plaintiff further believes that on a

---

[1]*See, Vasquez v. City of New York*, No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y. Sep. 24, 2012). (On a 12(b)(6) motion, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (*quoting Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).").

particular DES project, the "Crossroads Garage project," McIntosh ignored her input and failed to give her the proper recognition for her work on the project, while giving undue credit to male co-workers.  Nevertheless, Plaintiff maintains that she consistently received "above average if not stellar performance reviews during her tenure with the City of Rochester."[2]

Between 2009 and 2011, Plaintiff met with Demps at least once, and with Holahan several times, and indicated that she was uncomfortable meeting with McIntosh because of his behavior.  In late 2011, Holahan and Demps began attending meetings between McIntosh and Plaintiff, although Plaintiff maintains that Holahan and Demps failed to take any real action to address her concerns.

On February 28, 2012, Holahan, Demps and McIntosh met with Plaintiff and told her that her performance was deficient in certain respects, including her "ability to take direction from" McIntosh. See, Clark Aff. [#6-1], Ex. B.  Following that meeting, on March 7, 2012, Plaintiff sent an email to Holahan, McIntosh and Demps, stating that she had "a good faith basis to believe that [she had] been subject to discrimination on the basis of sex." Proposed Amended Complaint ¶ 50.  On April 10, 2012, in connection with the earlier meeting on February 28, 2012, McIntosh met with Plaintiff and gave her a list of performance expectations, and directed Plaintiff to provide him with a written response by April 17, 2012. The following day, April 11, 2012, Plaintiff filed a gender discrimination complaint with the U.S. Equal Opportunity Commission ("EEOC").

On April 23, 2012, Holahan issued a complaint against Plaintiff pursuant to New York Civil Service Law § 75 ("§ 75") based on Plaintiff's failure to provide a written response to McIntosh by April 17, 2012, as directed.  On April 23, 2012, Holahan issued a second § 75

---

[2] See, Pl. Memo of Law at p. 3 (citing to ¶ 19 of the Proposed Amended Complaint).

complaint against Plaintiff, charging her with several incidents of misconduct relating to her allegedly taking time off from work without permission and then falsifying her time card.  On July 25, 2012, Holahan suspended Plaintiff pending a resolution of the two § 75 complaints.

On August 3, 2012, Plaintiff commenced this action, alleging gender discrimination under color of state law, pursuant to 42 U.S.C. § 1983.  Although Plaintiff had already filed an EEOC complaint, she did not include a claim under Title VII, apparently because she had not yet received a "right to sue letter."  The Complaint [#1] in this action named the City of Rochester, Holahan and McIntosh as defendants, and purported to state three causes of action: 1) a claim for retaliation under the First Amendment; 2) a claim for disparate treatment discrimination and hostile environment discrimination under the 14th Amendment Equal Protection Clause; and 3) a *Monell* liability claim against the City of Rochester, based on an alleged policy of discrimination and a failure to train and supervise.

On October 4, 2012, Defendants filed the subject motion [#6] to dismiss the Complaint, for failure to state a claim under Fed.R.Civ.P. 12(b)(6).  Defendants maintained that the First Amendment retaliation claim lacked merit, because there were no plausible allegations of protected activity, adverse action or causal nexus.  Defendants also contended that the second cause of action failed to plausibly plead any type of gender discrimination.  Defendants further argued that the third cause of action, for *Monell* liability, failed because there was no underlying constitutional violation, and because the Complaint failed to allege any plausible theory of municipal liability.

On October 12, 2012, the Court issued a Motion Scheduling Order [#7], directing Plaintiff to file and serve any response by November 5, 2012.  At Plaintiff's request, the

Court subsequently granted her an extension of that deadline, to January 4, 2013. See, Docket No. [#8].

On January 4, 2013, in response to Defendant's motion to dismiss, Plaintiff both opposed the motion and cross-moved [#11] for leave to file an Amended Complaint.[3] Plaintiff admitted that there was no basis for a First Amendment retaliation claim, and withdrew that cause of action.   Plaintiff insisted, though, that the original Complaint [#1] adequately pleaded a discrimination claim under the Equal Protection Clause against McIntosh and Holahan and the City of Rochester, and a *Monell* liability claim against the City of Rochester, and the proposed amended pleading essentially repeated most of the allegations of the original pleading.  The Proposed Amended Complaint purports to set forth three causes of action: 1) a claim for disparate treatment discrimination under the 14th Amendment Equal Protection Clause against McIntosh, Holahan and the City of Rochester; 2) a *Monell* liability claim against the City of Rochester, based on an alleged policy of discrimination and a failure to train and supervise; and 3) a punitive damages "claim" against McIntosh and Holahan.   The Proposed Amended Complaint adds supplemental allegations, indicating that since the filing of the original Complaint, a hearing officer found Plaintiff guilty of all but one of the charges against her in the Section 75 Complaints.[4]  Plaintiff indicated

---

[3]Although Plaintiff is attempting to pursue claims of gender discrimination, the original Complaint [#1] prominently stated that the "Nature of the Case"  was for "age/disability" discrimination. See, Complaint [#1] at ¶ ¶ 2, 62.  As part of their motion to dismiss, Defendants pointed out this error, noting that this Court has previously warned Ms.  Agola about her "cut-and-paste" approach to drafting submissions. See, Def. Memo of Law [#6-2] at pp. 12-13.  Despite being advised of the error, Ms. Agola's   Amended Complaint still incorrectly indicates that the "Nature of the Case" is "age/disability" discrimination. *See*, Proposed Amended Complaint ¶ 2.

[4]Specifically, as to the first § 75 complaint, the hearing officer found Plaintiff not guilty of insubordination for failing to respond to McIntosh by April 17, as instructed, even though she failed to so respond, because there was possible mis-communication, and because Plaintiff was seeking additional time to respond.  However the Hearing Officer found Plaintiff of guilty of insubordination, dishonesty, falsifying her

that as a result of that finding, the City of Rochester demoted her to the position of "Architect," and took away her private office, computer and cell phone.

On May 22, 2012, counsel for the parties appeared before the undersigned for oral argument.  Although not necessarily relevant to the subject motions, during oral argument the Court observed that it seemed unusual that Plaintiff's counsel had chosen to pursue a Section 1983 claim, rather than a Title VII claim.  Plaintiff's attorney, Mr. Woodworth, who was appearing for Ms. Agola, indicated that he did not think it was unusual.  Defendant's counsel  offered that prior to the commencement of the action, he had discussed that issue with Plaintiff's counsel, Ms. Agola, and had urged her to wait to commence this action until after the EEOC had issued a "right to sue letter," so that she could include a Title VII claim.  However, Plaintiff's counsel apparently disregarded that suggestion and commenced the subject action solely as a Section 1983 claim.  After oral argument, the Court became aware that Plaintiff's counsel, Ms. Agola, actually *had* filed a Title VII claim as a *separate action*, though Woodworth[5] and Defendant's counsel[6] were both unaware of that fact at oral argument.  Consequently, it appears clear that Plaintiff's counsel, Ms. Agola, made a conscious decision to pursue the Title VII claim in a separate lawsuit, rather than as a claim in this action.

---

time card and being absent from work without authorization, in connection with the second § 75 complaint. See, Agola Decl. Ex. C.

[5]As Ms. Agola's associate, one would expect that he would be aware of the other lawsuit.  However, since he made no mention of it in response to the Court's direct question, the Court will give him the benefit of the doubt and assume that he did not know of the Title VII action.

[6]It appears that Ms. Agola filed the other action on February 4, 2013, after the briefing on the subject motions was completed, but never served the defendants.  *See, Marcotte v. City of Rochester*, 13-CV-6055 MAT.  On February 5, 2013, summonses were issued, but as of May 22, 2013, no proof of service had been filed with the Court.

DISCUSSION

Plaintiff has moved to amend the Complaint.  It is well-settled that "[l]eave to file an amended complaint shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); internal quotation marks omitted).  In considering whether a proposed amendment would be futile, "the appropriate legal standard is whether the proposed complaint fails to state a claim, the traditional Fed.R.Civ.P. 12(b) standard." *New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F.Supp.2d 121, 124 (S.D.N.Y.2009).  In this action, as discussed below, Plaintiff's claims cannot survive a 12(b)(6) motion.  Nevertheless, because the Amended Complaint omits the First Amendment claim and significantly narrows the issues for consideration, the Court will allow the amendment and consider the Motion to Dismiss in connection with the Amended Complaint.  Accordingly, Plaintiff's cross-motion to amend is granted.

Defendant has moved to dismiss the complaint for failure to state a claim, and the standard for such motions is well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[7] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.  2009) (citations and internal quotation marks omitted).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

---

[7]The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

Plaintiff is asserting claims of sex discrimination under § 1983.  Specifically, she is alleging "disparate treatment based on sex." *See*, Amended Complaint ¶ 78.  Although the Amended Complaint contains a passing reference to "hostile environment based on sex," *see*, ¶ 20, it does not purport to assert to a claim for hostile work environment. *See*, Amended Complaint ¶ ¶ 76-83.  To the extent Plaintiff may disagree with that assessment, the Court would find, in any event, that the amended pleading fails to state an actionable claim for hostile environment discrimination as an equal protection constitutional claim.

Similarly, while the Amended Complaint contains several references to retaliation,[8] it does not purport to plead a retaliation claim under the Equal Protection clause, and in any event, equal protection employment discrimination retaliation claims are not actionable under § 1983. *See, Klaes v. Jamestown Bd. of Public Utilities*, No. 11-CV-606, 2013 WL 1337188 at *14 (W.D.N.Y. Mar. 29, 2013) (Holding that claims for retaliation following a complaint of employment discrimination are not actionable as an equal protection claim under § 1983, citing *inter alia*, *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1995) ("Although claims of retaliation are commonly brought under the First Amendment . . . and may also be brought under Title VII . . .  we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination. Given the availability of Title VII, which [plaintiff] has chosen not to invoke, we see no reason to break new constitutional ground in this case."); *see also, White v. Dep't  of Correctional Servs.*, 814 F.Supp.2d 374, 392 (S.D.N.Y. 2011) ("To the extent that the plaintiff seeks to ground

---

[8]Plaintiff has expressly withdrawn her First Amendment retaliation claim, *see*, Pl. Memo of Law at p. 15,  and at oral argument, Plaintiff's counsel agreed several times that Plaintiff is not presently asserting a retaliation claim, even though the Amended Complaint is replete with superfluous references to retaliation. See, e.g., Amended Complaint ¶ ¶ 46, 52, 71, 89

her equal protection claim in retaliation, such efforts must fail.") (citing, *inter alia, Bernheim v. Litt*).[9]

As for Plaintiff's equal-protection-disparate-treatment claim, such a claim is actionable under § 1983, if properly pleaded. *See, Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (Finding that the plaintiff could assert a § 1983 Equal Protection claim based on public employment discrimination, stating that "[m]ost [10] of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause."). In that regard,

> sex-based discrimination may be actionable under § 1983 as a violation of equal protection." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir.2006). "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII ...." *Id*. Thus, under the familiar framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), [plaintiff] first bears the burden of making out a prima facie case of gender discrimination against the [defendant]. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir.2004). A plaintiff establishes a prima facie case "by showing that (1) [s]he is a member of a protected class; (2) [s]he is competent to perform the job or is performing [her] duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on [her] membership in the protected

---

[9]As mentioned above, it appears that Plaintiff has purposefully chosen not to assert a Title VII retaliation claim in this action. However, even if she had, the Court notes that the protected activity upon which she apparently relies, i.e., her email alleging discrimination and her EEOC complaint, both occurred after the February 28, 2012 meeting at which she was essentially placed on a performance improvement plan, which may undercut an inference of causal nexus. *See, Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir.2001) (Holding that temporal proximity alone does not create an inference of retaliation when the adverse action is part of, or the culmination of, a disciplinary process that was already underway prior to the protected activity).

[10]As exception to this is retaliation claims, which are not cognizable. *See, cases cited above*.

> class." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir.2005).  . . .
> [With regard to the fourth prong of this analysis] [f]or a plaintiff to establish a
> prima facie case by comparing herself to others who allegedly received
> different treatment, the potential comparators "must have a situation
> sufficiently similar to plaintiff's to support at least a minimal inference that the
> difference of treatment may be attributable to discrimination." *McGuinness v.
> Lincoln Hall*, 263 F.3d 49, 54 (2d Cir.2001). Stated differently, "the individuals
> with whom [a plaintiff] attempts to compare herself must be similarly situated
> in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60,
> 64 (2d Cir.1997).

*Doe v. City of New York*, 473 Fed.Appx. 24, 26-27, 2012 WL 1034647 at *1 (2d Cir. Mar. 29, 2012) (unpublished).  Of course, plaintiff is not required to plead a prima facie case, but she must plead a plausible claim, as discussed above.

In this action, Plaintiff contends that her supervisor, McIntosh, treated her differently than "male division heads" in his personal interactions with her, by, *inter alia*, being "unresponsive" to her, and by "staring at the ground" when she talked.  More specifically, the Amended Complaint states:

> 21.  By way of background, on or around February 2009, Plaintiff felt she was
> being harassed on the basis of sex by her direct supervisor City Engineer Jim
> McIntosh ("McIntosh").

> 22.  Plaintiff felt this way because as the sole female Senior Architect,
> McIntosh was treating Plaintiff so differently from the other male division
> heads such as Managing Engineer of Construction, Al Giglio, and Managing
> Engineer of Street Design, Bill Kiselycznyk.

> 23.  During these one-on-one meetings in the year of 2009, McIntosh would
> be unresponsive to Plaintiff; he would not answer any of Plaintiff's questions;
> he was hostile in the way he would stare at Plaintiff, and intimidating in the
> way he would stare at the ground when Plaintiff would talk to him.

24. What made it further clear to Plaintiff that McIntosh's conduct was directed at her solely because of her sex, [was that] McIntosh did not treat the other [sic] male division heads in the same manner, i.e., he treated the males in a fashion that did not serve to deprive them of a material term, condition or aspect of the employment relationship and treated them equally.

\*\*\*

29.  . . .  McIntosh's behavior [was] very disparate towards her, especially on the Crossroads Garage project, where all of her input was disregarded and ignored, and credit was given to other male supervisors who had done little to no work on that project.

\*\*\*

33.  . . .  McIntosh refused to return any of Plaintiff's e-mails when she sought assistance with basic work problems.

34.  . . .  [Plaintiff] felt she was being bullied during the one-on-one meetings in the way that Supervisor McIntosh treated her with hostility and derision.

\*\*\*

37. [When] meeting with Supervisor McIntosh alone [Plaintiff] felt as though she was being bullied by Supervisor McIntosh's behavior, and how Supervisor McIntosh continued to be non-responsive to the Plaintiff [.]

38.   For example, whenever Plaintiff would inquire into any performance issues she might be having, Supervisor McIntosh would either stare at Plaintiff in complete silence or stare at the floor in silence which greatly affected her ability to get any work done.

39.  Again, Supervisor McIntosh did not treat the other male division heads in the same manner.

Amended Complaint ¶ ¶ 21-24, 29, 33-34, 37-39.

The Court finds that the allegations in the Amended Complaint, either separately or together, do not plausibly state a disparate treatment claim on the basis of gender. Assuming that McIntosh in fact stared at the floor when he met with Plaintiff, and was not as responsive as Plaintiff  wanted him to be, such behavior does not reasonably suggest

that he harbored discriminatory animus on the basis of gender. *See, Filippi v. Elmont Union Free School Dist. Bd. of Educ.*, No. 09–cv–4675 (JFB)(ARL), 2012 WL 4483046 at *18 (E.D.N.Y. Sep. 27, 2012)  ("G]eneral claims of uncivilized behavior, unrelated to a person's status in a protected class, are not cognizable under Title VII.") (citation omitted); *see also, Brown v. Society for Seaman's Children*, 194 F.Supp.2d 182, 192 (E.D.N.Y. 2002) ("Plaintiff's complaints [that her supervisor] was rude, threatening and combative toward her evidences the hostility between them, but does not provide ground for inferring that the hostility stemmed from plaintiff's race or gender.").

Furthermore, Plaintiff's contentions that McIntosh acted differently during his meetings with males are conclusory and not plausible, since Plaintiff fails to allege any facts suggesting that she observed, or otherwise has any actual information concerning, the one-on-one meetings between McIntosh and the male employees.   In that regard, at oral argument, Plaintiff's counsel could not explain how Plaintiff could know what took place at those meetings at which she was not present.[11]  Similarly, while Plaintiff states that McIntosh did not respond to her emails,[12]  she does not allege that he responded to male employees' emails, nor does her pleading plausibly suggest that she has any actual knowledge on that point.  In addition, Plaintiff's contention that McIntosh "did not treat the male division heads

---

[11]Plaintiff also contends that she was treated differently than male employees since, beginning near the end of 2001, her meetings with McIntosh became "group meetings" with McIntosh, Holahan and Demps. *See,* Amended Complaint ¶ 43 ("Other similarly situated male division heads never had these types of 'group meetings,' only the plaintiff.").  This allegation seems highly disingenuous, since Plaintiff maintains that prior to having such group meetings, she had repeatedly complained to Holahan that she was uncomfortable meeting with McIntosh alone. *See, id.* at ¶  37 ("On multiple occasions . . . Plaintiff had meetings with Commissioner Holahan to express how uncomfortable she was meeting with Supervisor McIntosh alone[.]"). In any event, contrary to Plaintiff's contention, the fact that male employees did not have such group meetings is not indicative of disparate treatment, since, unlike  her,  there is no indication that any of them complained of being uncomfortable meeting alone with McIntosh.

[12] Amended Complaint ¶ 33.

in the same manner" is merely conclusory, since it is not supported by factual allegations. *See, e.g., Preston v. Hilton Cent. School Dist.*, 876 F.Supp.2d 235, 244 (W.D.N.Y. 2012) ("Although the amended complaint contains boilerplate allegations that the defendants treated male same-sex sexual harassment complainants differently from female complainants, and that the District maintained a policy or practice to that effect, plaintiffs have failed to set forth any supporting facts that would render these conclusory allegations plausible, such as facts identifying similarly-situated students or describing the treatment of female complainants by the defendants in like circumstances.").

Plaintiff's feeling that McIntosh did not give her the proper amount of "credit" for her work on the "Crossroads Garage project"[13] also does not plausibly suggest discrimination, particularly since Plaintiff maintains that she regularly received "above average if not stellar performance reviews during her tenure with the City of Rochester." Pl. Memo of Law at p. 3 (citing to ¶ 19 of the Amended Complaint). *See, Crawford-Mulley v. Corning Inc.,* 194 F.Supp.2d 212, 221 (W.D.N.Y. 2002) ("[P]laintiff's personal opinion of her performance neither creates an inference of discrimination nor constitutes evidence of pretext.") (citation omitted).

Moreover, while Plaintiff repeatedly emphasizes that she "felt" "in good faith" that McIntosh was discriminating against her,[14] her feelings do not make her claim plausible. *See, Bickerstaff v. Vassar College*, 196 F.3d 435, 456 (2d Cir. 1999) ("Bickerstaff next relies on her own affidavit and deposition testimony in which she stated that she had experienced

---

[13]See, Amended Complaint ¶ 29

[14]*See, e.g.*, Amended Complaint ¶ ¶ 20, 22, 26, 28, 30, 32, 34, 37, 44 and 49.

14

feelings of isolation, hostility, and disinterest in her work in Africana Studies. We also find this tissue-thin contention unpersuasive.  Bickerstaff's feelings and perceptions of being discriminated against are not evidence of discrimination.") (citation and internal quotation marks omitted).

To the extent that Plaintiff maintains that the Civil Service Law § 75 charges that Holahan filed against her are evidence of disparate treatment, the Court disagrees, since the Amended Complaint does not deny that Plaintiff committed the infractions for which she was disciplined, nor does it assert any factual allegations that similarly situated males were treated differently with regard to discipline.[15]   A presumably-neutral hearing officer found Plaintiff guilty of all but one of the § 75 charges, and the Amended Complaint does not allege any bias or wrongdoing in connection with the disciplinary hearing.  As for the one charge of which Plaintiff was "acquitted," the hearing officer found that Plaintiff committed the infraction, but attributed such failure to factors other than intentional insubordination.  Moreover, while Plaintiff asserts that her working conditions after being demoted were discriminatory, the Amended Complaint does not plausibly plead disparate treatment in that regard. Specifically, it does not plead facts suggesting that any similarly situated male employee, after having been demoted for disciplinary reasons, was treated better.

For all of the foregoing reasons, the Amended Complaint fails to state an actionable claim of disparate treatment public employment discrimination under § 1983.

---

[15]Instead, Plaintiff merely makes the conclusory assertion that "other employees have engaged in the same conduct as Plaintiff and were not subject to Section 75 hearings as Plaintiff was." Amended Complaint ¶ 88.  In addition to failing to mention whether those "other employees" were male or female, the pleading fails to include any facts to plausibly suggest that any other employees actually engaged in the same conduct as Plaintiff, or that they were similarly situated to her.

The Amended Complaint similarly fails to state a claim for *Monell* liability against the City of Rochester, since no underlying constitutional violation is plausibly pleaded. *See, Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir.2006) ("[B]ecause the district court properly found no underlying constitutional violation, its decision not to address the County defendants' liability under *Monell* was correct."). Even assuming that there was a plausible underlying claim pleaded, Plaintiff's allegations concerning a municipal policy or custom by the City of Rochester are conclusory and do not plausibly suggest a basis for *Monell* liability. *See*, Amended Complaint ¶ ¶ 6, 69, 74-75.[16]

## CONCLUSION

For the foregoing reasons, Plaintiff's cross-motion to amend [#11] is granted, Defendants' motion to dismiss [#6] is granted, and this action is dismissed with prejudice. The Clerk of the Court is directed to close this action. Counsel are directed to notify Judge Telesca, to whom Plaintiff's Title VII claim is assigned, of the Court's Decision and Order.

SO ORDERED.

Dated:      May 29, 2013
            Rochester, New York

                                          /s/ Charles J. Siragusa
                                          CHARLES J. SIRAGUSA
                                          United States District Judge

---

[16]Defendants' counsel correctly observes that, "[a]lthough the complaint alleges a policy, it does not provide any factual support for this policy, either in the form of the description of some specific policy, or in facts upon which the inference of any custom or practice could be based." Def. Memo of Law at 22.